UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EUGENE NETTLES,

        Plaintiff,

vs.                                         Case No. 3:09-cv-862-J-MCR

MICHAEL ASTRUE, Commissioner of the
Social Security Administration

        Defendant.
_____/

**MEMORANDUM OPINION AND ORDER[1]**

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability, Disability Insurance Benefits, ("DIB") and Supplemental Security Income ("SSI") on October 17, 2006, alleging an inability to work since August 8, 2005. (Tr. 98). The Social Security Administration denied Plaintiff's application initially and again upon reconsideration. (Tr. 51-62). Plaintiff subsequently filed a timely request for a hearing on the matter. (Tr. 72). Plaintiff's request was granted and a hearing was conducted by an administrative law

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 7).

judge ("ALJ") on May 8, 2007. (Tr. 21-48). The ALJ issued a decision on July 16, 2008, concluding Plaintiff was not disabled. (Tr. 10-20). The Appeals Council denied Plaintiff's request for review on June 26, 2009. (Tr. 1-4). Accordingly, the ALJ's July 16, 2008 decision is the final decision of the Commissioner. 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff timely filed his Complaint in the United States District Court on August 17, 2009. (Doc. 1).

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff claims to be disabled since August 5, 2005 due to disorders of the spine. (Doc. 11, pp. 11-15).

### B.     Summary of the Evidence Before the ALJ

Plaintiff was born on March 15, 1958 and was fifty years of age at the time of the administrative hearing. (Tr. 24). He has a high school diploma, one year of college, and twelve years of military experience. (Tr. 25). Plaintiff's past relevant work consists of skilled positions in retail management requiring light and medium exertion. (Tr. 44).

The record reveals the following relevant medical information. According to Plaintiff, while serving in the military, he fell thirty to forty feet off a cliff and injured his right leg, his knee, and his foot. (Tr. 243, 378). Plaintiff also claimed to have re-injured his leg multiple times since that initial incident, principally in August 2005 when he slipped on a watery concrete floor and injured his left hip and his back. (Tr. 28, 243, 286, 378).

On August 8, 2005, shortly after his second fall, Plaintiff presented to Robert James, M.D. of Baptist Primary Care. (Tr. 204-05). Upon examination, Plaintiff displayed a limited lumbar range of motion and pain in the back and hips. (Tr. 204-05). On September 1, 2005, Plaintiff had a follow-up examination with Dr. James and reported continued pain in the lower back and left leg, including the left knee. (Tr. 202-03). Dr. James noted Plaintiff's deep tendon reflexes ("DTR") and sensory levels were normal. Additionally, Dr. James conducted a straight leg raise ("SLR") test, which was negative. (Tr. 203). On September 5, 2005, Plaintiff underwent Magnetic Resonance Imaging ("MRI") of the lumbar spine. (Tr. 284). The MRI revealed disc protrusions affecting the existing nerve roots. Id.

On October 3, 2005, Plaintiff began physical therapy at Cora Rehabilitation Clinic. (Tr. 259-86). P. Mounteiro, M.D. conducted the initial evaluation which indicated Plaintiff was experiencing decreased lumbar range of motion and mild atrophy of the left calf, along with decreased DRT in the patellar and Achilles tendons. (Tr. 281). Dr. Mounteiro also noted Plaintiff's strength and range of motion in both legs were decreased, but within functioning limits. Id. The left leg was slightly more decreased than the right leg, however, the results of an SLR test were negative. Id.

The treatment records following subsequent visits to Cora Rehabilitation Clinic indicated Plaintiff's physical therapy had some benefit. After six visits, Plaintiff demonstrated improved strength in the left leg and pain-free lumbar range of motion approximately seventy-five to ninety percent of normal. (Tr. 269). However, after his sixth visit, Plaintiff aggravated his back riding a lawnmower, and by the ninth visit,

Plaintiff's lumbar range of motion had regressed back to the level of his initial evaluation. (Tr. 268). On October 24, 2005, Dr. James opined the physical therapy was beneficial and should continue. (Tr. 199). However, Plaintiff stopped attending physical therapy on October 27, 2005, because he was suffering from kidney stones. (Tr. 259).

On March 28, 2006, Dr. James referred Plaintiff to Riverside Spine & Pain Physicians ("Riverside Spine") to begin a pain management program. (Tr. 182, 237). On April 25, 2006, Craig Kornick, M.D. of Riverside Spine evaluated Plaintiff. (Tr. 237-40). Dr. Kornick observed Plaintiff's lumber range of motion was slightly decreased and his Achilles tendon showed decreased DTR bilaterally. (Tr. 238-39). Further, Dr. Kornick noted Plaintiff's sensory tests were normal to light touch and pin prick and an SLR test was negative bilaterally. (Tr. 238-39). Based on this initial examination, Dr. Kornick began a pain treatment program which lasted through December 29, 2006. (Tr. 220-41).

On November 15, 2006, Eric Puestow, M.D., a state agency consultant, conducted a Residual Functional Capacity ("RFC") assessment. (Tr. 212-19). Reviewing Plaintiff's treatment records, Dr. Puestow noted a lack of atrophy, lack of motor loss, and lack of sensory abnormalities. (Tr. 213). The records also noted Plaintiff's SLR tests were negative. Id. Dr. Puestow concluded, as noted by the ALJ, Plaintiff had potentially credible allegations, but few objective findings to support the level of his complaints. (Tr. 14, 217).

On March 20, 2007, Lynn Harper-Nimock, M.D., a state agency consultant, conducted an orthopedic examination of Plaintiff. (Tr. 243-49). In Plaintiff's thoracic and lumbar spine, Dr. Harper-Nimock observed "decreased flexion, extension, lateral flexion, and decreased rotary motion bilaterally." (Tr. 245). Further, Dr. Harper-Nimock observed a positive SLR test bilaterally. Id. Also, in both the arms and legs, Dr. Harper-Nimock noted Plaintiff had 5+/5+ strength, physiologic and equal reflexes, normal sensory results, and no atrophy. Id.

On May 23, 2007, Plaintiff underwent a Compensation and Pension Evaluation at the Veterans Affairs Medical Center ("VAMC") in Gainesville, Florida. (Tr. 309-12, 325-28). Michael Maraist, M.D. noted Plaintiff's muscle tone and bulk was normal, strength in the arms and legs was 5/5, and a sensory examination of all four extremities was intact to vibration, light touch, pin prick, and temperature. (Tr. 327). The only relevant limitation Dr. Maraist observed was a decreased ankle jerk of the right side. Id. Dr. Maraist did not perform an SLR test, nor did he objectively observe any painful motion on Plaintiff's part. (Tr. 328).

On September 26, 2007, Farah Mullah, M.D. of the VAMC examined Plaintiff. (Tr. 378). Dr. Mullah noted Plaintiff demonstrated limited lumbar flexion, but 5/5 strength in the arms and legs with sensation intact, and a normal DTR. (Tr. 381). On October 25, 2007, Plaintiff presented himself to the VAMC complaining he aggravated his back pain when he slipped and fell the previous day. (Tr. 370). Dr. Mullah reassessed Plaintiff's pain and ordered a lumbar MRI. Id. Dr. Mullah also noted Plaintiff still exhibited 5+ strength in the arms and legs, and normal reflex in the patellar

tendon. (Tr. 372). At this point, Plaintiff had a positive SLR test. (Tr. 375). The lumbar MRI revealed mild to moderate degenerative disc disease throughout the lumbar spine. (Tr. 356).

On May 21, 2008, Plaintiff underwent a Compensation and Pension Evaluation by Carl Dragstedt, M.D. of the VAMC. (Tr. 308-09). Dr. Dragstedt noted tenderness due to palpitation in Plaintiff's back but observed no sensory loss. (Tr. 309). Further, Plaintiff demonstrated 5/5 bilateral strength and sensory levels in the arms, and 4/5 bilateral strength with 2/5 sensory levels in the legs. Id. Additionally, Plaintiff's SLR test was positive with decreased DTR in the patella and Achilles tendons bilaterally. Id.

### C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ must follow five steps when evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, a claimant is disabled if his impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20

C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The claimant bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

In the instant case, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through June 30, 2010.  (Tr. 12).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date, August 5, 2005.  (Tr. 12-13, 18).  At step two, the ALJ determined Plaintiff suffered from severe impairments: disorders of the spine and hypertension.  (Tr. 13).  At step three, the ALJ found Plaintiff's impairments did not meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.  The ALJ further determined Plaintiff retained "the residual functional capacity to perform a full range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a)."  (Tr. 14).  Making this determination, the ALJ found Plaintiff's statements regarding the disabling effect of his pain was not credible.  (Tr. 16).  At step four, the ALJ found Plaintiff was unable to perform any of his past relevant work.  (Tr. 18).  However, at step five, relying in part on the testimony of a vocational expert, the ALJ found Plaintiff possessed work skills transferable to other occupations existing in the national economy, specifically semi-

skilled employment as a check cashier or skilled employment as a cashier.  (Tr. 19). Consequently, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 20).

## III.   ANALYSIS

### A. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must be such relevant evidence that a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer could reach a contrary result as finder of fact and even if the reviewer finds the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837

(11th Cir. 1992) (explaining the court must scrutinize the entire record to determine the reasonableness of the factual findings).

### B. Issue on Appeal

Plaintiff raises one issue on appeal. (Doc. 11). Plaintiff argues the ALJ erred in concluding the severity of Plaintiff's alleged back impairment did not meet or medically equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically Listing 1.04A, disorders of the spine. (Doc. 11, pp. 11-15). Plaintiff requests this Court reverse the ALJ's decision and remand the claim for the payment of benefits or remand the matter with instructions for the ALJ to conduct a new determination of whether Plaintiff's back impairment meets or equals Listing 1.04A. (Doc. 11, pp. 14-15). In response, the Commissioner argues Plaintiff did not experience all of the symptoms simultaneously, and even if so, he did not experience them simultaneously for a continuous period of at least twelve months. (Doc. 12, pp. 5-7).

**Whether the ALJ erred when determining Plaintiff's impairment did not meet or equal Listing 1.04A.**

Plaintiff argues there is specific evidence in the record showing he met or equaled all of the requirements for Listing 1.04A.[2] (Doc. 11, pp. 11-15). Further, Plaintiff contends the ALJ erred by relying on the opinion of Dr. Puestow, who stated "there are few objective exam findings to support the magnitude of [Plaintiff's]

---

[2] Plaintiff fails to present evidence of any additional symptoms at least equal in severity and duration to the requirements of Listing 1.04A. Therefore, the Court finds Plaintiff's argument is insufficient to establish medical equivalence to Listing 1.04A. See Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (requiring a plaintiff to present specific evidence describing alleged medical equivalence). As such, the Court will simply determine whether Plaintiff met Listing 1.04A.

complaints." (Doc. 11, p. 15), (Tr. 14, 217). Plaintiff claims Dr. Puestow's statement was not reliable because he made it in November 2006, which was prior to the manifestation of many of the symptoms Plaintiff contends satisfy Listing 1.04A. (Doc. 11, p. 15).

The listing of impairments in the Code of Federal Regulations identifies impairments considered severe enough to prevent a person from doing any gainful activity. 20 C.F.R. §§ 404.1525(a), 416.925(a). By meeting a listed impairment, Plaintiff is presumptively disabled without consideration of his age, education, or work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Thus, an ALJ's sequential evaluation of the claim ends if Plaintiff can establish the existence of a listed impairment. Edwards v. Heckler, 736 F.2d 625, 628 (11th Cir. 1984). However, at this stage of the evaluation process, the burden is on Plaintiff to prove he is disabled. Bell v. Bowen, 796 F.2d 1350, 1351 (11th Cir. 1986); Wilkinson, 847 F.2d at 662.

To meet a listed impairment, Plaintiff must show his impairment manifested the specific symptoms described in the medical criteria for the applicable listing. Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885 (1990). When attempting to meet a listing, a plaintiff must show impairments that meet *all* of the criteria of the listing, regardless of the severity of any individual impairment. See id. at 530-31 (emphasis added).

Listing 1.04A reads:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A. Plaintiff must present specific findings of the various criteria under Listing 1.04A, including a positive SLR test as the Court finds Plaintiff's complaints involve lower back pain. See Bell, 796 F.2d at 1353. Additionally, the symptoms must last or be expected to last for a continuous period of twelve months. 20 C.F.R. §§ 404.1525(c)(4), 416.925(c)(4). This requirement is particularly important with Listing 1.04A because "[m]usculoskeletal impairments frequently improve with time or respond to treatment. Therefore, a longitudinal clinical record is generally important for the assessment of severity and expected duration of an impairment . . ." 20 C.F.R. Part. 404, Subpart. P, Appendix. 1 § 1.00H(1); Castro v. Astrue, No. 8:08-cv-769-T-33TGW, 2009 WL 1975513, at 4 (M.D. Fla. July 8, 2009).

The Commissioner argues Plaintiff has failed to prove he consistently demonstrated a limited range of motion of the spine, motor loss accompanied by sensory or reflex loss, and a positive SLR test. (Doc. 12, pp. 6-7). Specifically, the Commissioner contends Plaintiff did not consistently experience these limitations for a period of twelve months. (Doc. 12, p. 7). The Court will consider the entire record, taking into consideration the medical evidence available subsequent to Dr. Puestow's RFC assessment. Because Plaintiff must show the existence of every symptom in the listing, the Court will begin its review with instances in which Plaintiff showed a positive SLR test, which occurred on only two occasions. See Sullivan, 493 U.S. at 530 (finding

an impairment that satisfies only some of the criteria, no matter how severe, will not qualify).

Although Plaintiff had various symptoms of Listing 1.04A since August 2005, he did not have a positive SLR test until March 20, 2007. Therefore, this was the earliest date at which Plaintiff could show he satisfied all of the requirements of Listing 1.04A. On March 20, 2007, Plaintiff underwent an orthopedic evaluation by Dr. Harper-Nimock. (Tr. 243-46). This examination revealed a decreased spinal range of motion and a positive SLR test. (Tr. 245). However, Plaintiff had no muscle atrophy and had 5+/5+ strength bilaterally. Id. Also, Plaintiff had no sensory abnormalities and his reflexes were physiological and equal. Id. Accordingly, even though Plaintiff had a positive SLR test, there was no motor loss accompanied by sensory or reflex loss and thus, Plaintiff failed to satisfy Listing 1.04A at that time.

An examination on May 23, 2007, by Dr. Maraist of the VAMC again revealed a lack of any motor loss accompanied by sensory or reflex loss. (Tr. 308-13, 325-28). Dr. Maraist's neurologic examination revealed normal muscle tone and bulk, with 5/5 strength bilaterally in his arms and legs. (Tr. 327). Further, Plaintiff's sensation was "intact to vibration, light touch, pin prick, and temperature . . . throughout all four extremities." Id.

On May 21, 2008, Plaintiff had another positive SLR test. (Tr. 309). Dr. Dragstedt conducted a physical evaluation of Plaintiff at the VAMC and noted Plaintiff had a positive SLR test that was mild on the left leg, but caused visible pain in the right leg. Id. Dr. Dragstedt also observed a decrease in strength in the legs to 4/5

accompanied by a sensory decline to 2/5.  Id.  Along with decreased sensation, Plaintiff exhibited decreased reflexes bilaterally at the patella and Achilles tendons.  Id.  However, Dr. Dragstedt's lumbar examination revealed only tenderness with no sensory loss.  (Tr. 308).  Further, Dr. Dragstedt's diagnosis failed to corroborate Plaintiff's complaints concerning limitations on his spinal range of motion.  Id.

Even if Plaintiff objectively displayed a limited spinal range of motion at this examination, the Court finds this one instance in which Plaintiff satisfied the requirements of Listing 1.04A is not sufficient.  There is nothing in the medical evidence of record indicating Dr. Dragstedt observed anything more than a brief period of aggravation.  On September 26, 2007, nine months prior to the examination with Dr. Dragstedt, Plaintiff underwent a physical examination at the VAMC by Dr. Mullah.  (Tr. 378-90).  At this time, Plaintiff had full strength in both the arms and legs with intact sensation throughout, normal tendon reflexes bilaterally, and Plaintiff's SLR test was negative.  (Tr. 372, 375).

The burden to meet a listed impairment is heavy, but one the plaintiff must bear in order to receive an automatic finding of disability under 20 C.F.R. §§ 404.1520(d), 416.920(d).  Stanton v. Astrue, 617 F.Supp.2d 1205, 1215 (M.D. Fla. 2008) (stating the evidentiary standards for presumptive disability are stricter under a Listing because it is an automatic screening without any individual judgment of Plaintiff's claim).  Plaintiff's condition illustrates the difficulty proving musculoskeletal impairments because he demonstrated the individual requirements under Listing 1.04A, to some degree of severity, at various times since August 2005.  However, there is substantial evidence to

support the ALJ's conclusion that Plaintiff did not simultaneously demonstrate all of the conditions for a continuous twelve-month period. (Tr. 13). Therefore, this Court will not disturb the ALJ's decision that Plaintiff is not disabled.

## IV. CONCLUSION

For the foregoing reasons, the Clerk is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's decision. Thereafter, the Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida this  26th  day of August, 2010.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record